The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CURT BAGLEY and SANDRA BAGLEY, and the marital community comprised thereof,

Plaintiffs,

v.

TRAVELERS HOME AND MARINE INSURANCE COMPANY,

Defendant.

No. 2:16-CV-00706- JCC

PLAINTIFFS' MOTION TO COMPEL

NOTE ON MOTION CALENDAR:
JULY 8, 2016

## I. RELIEF REQUESTED

Plaintiffs Curt and Sandra Bagley respectfully request an order compelling production of the following documents from defendant Travelers:

- All documents, including post-litigation material, created during adjustment of the Bagley's claim;

- All claims manuals related to the handling of property insurance claims;

- All documents related to the training of the Travelers employees working on the Bagleys' claim;

- Employee incentive and bonus program information relating to all compensation for the claims department, their managers and any others, such as in-house claims counsel, together with all documents concerning how such compensation is determined;

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 1

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

- Personnel files of all Travelers employees working on the claim;
- Prior bad faith complaints made against Travelers in the past five years;
- Metrics and all other financial information related to profit and revenue of the claim department, however evaluated; and
- The Bagleys' underwriting file.

The above discovery is standard in bad faith litigation. Travelers has no reasonable basis to withhold this information from its insureds.

## II. EVIDENCE RELIED UPON

This motion relies on the Declaration of Kathryn M. Knudsen and the files herein.

## III. FACTS

### A. Case overview

Mr. and Mrs. Bagley own a home on Sandy Point in Ferndale, Washington. The Bagleys were insured by Travelers under a homeowners' policy no. 0DGQ30 990362148-663-1 and submitted a claim on November 13, 2015, after a severe windstorm damaged their dock and ramp. The policy provides coverage for damage due to wind.

Travelers sent adjuster Matt Gjersee to investigate the loss about a week later. Mr. Gjersee found that there was no evidence of wave damage from any source and agreed that denying the claim based on waves was pure speculation. Dkt. 13 at 80:160-18; 85:1–8.

On December 3, 2015, Travelers denied the Bagleys' claim anyway on the grounds that the loss was caused by waves, not wind. Dkt. 18-1, Ex. A. It denied the claim again for the same reason on January 12, 2016, *id.* Ex. B, and a third time on March 9, 2016, *id.* Ex. C. Mr. Gjersee knew this was wrong to deny. *Id.* at 78:16–20. *See also id.* at 99:15 ("I believe the denial was unsupported."). And he "agree[s] that [Travelers] did not have the sufficient evidence to deny his claim and thus it was unfair to the Bagleys." *Id.* at 131:16–18. But his supervisor required

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 2

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

him to do so anyway, and someone in the legal department (presumably in-house counsel Lisa Cronin)[1] drafted the March 9 denial. Dkt. 27-1, Ex. A at 101:5–102:25

Six months after the loss, and after the Bagleys were forced to hire attorneys and commence litigation, Travelers' shared its purported expert's report, dated April 27, 2016. Dkt. 13 Ex. B. The report confirms what the Bagleys (and Travelers) knew all along—that waves could not have caused the loss because the Bagleys' dock is located in a protected waterway. *Id*. Around this same time, while Travelers was still adjusting the Bagley's claim, it held a training session for its Washington adjusters, including Mr. Gjersee and his supervisors. Dkt. 27-1, Ex. A at 14:6–20. The training was put on by Lisa Cronin and Lloyd Bernstein. *Id.* at 188:16–20. They gave attendees a handout on the WAC regulations, but it has not been produced. *Id.* at 27:4–16. Travelers has not disclosed what other training materials exist.

**B.      Travelers' deficient discovery responses**

Plaintiffs served discovery requests on Travelers with their complaint. Travelers responded on April 1, 2016, and produced only a portion of the claim file, the policy, and nothing more. Knudsen Decl. Ex. A.

**C.      Certification**

The parties held a discovery conference on the issues raised in this motion on April 5, 2016. Knudsen Decl. Ex. B. Although a few of topics were narrowed at that time, a dispute remains as to the majority of the plaintiffs' requests. *Id.* Furthermore, none of the documents Travelers promised to produce have been produced, *id.* Ex. C, and Travelers is now demanding a protective order before it produces any additional documents, *id.,* Ex. D, ensuring that the next

---

[1] Ms. Cronin is believed to supervise Travelers' in-house claims counsel, outside counsel (such as Mr. Bernstein), and adjusters, whom she trains.

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

disadvantaged insured has to go through the same discovery hurdles as the Bagleys. Plaintiffs will inform the Court should Travelers produce any additional documents prior to this motion being heard.

## IV. STATEMENT OF ISSUE

Should the Court order Travelers to produce the documents requested by plaintiffs? **Yes.**

## V. AUTHORITY

### A. General discovery rules

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26, Advisory Committee Notes, 1983 Amendment, Subdivision (g). Rule 26 mandates "'a spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials.'" *Appling v. State Farm Mut. Auto. Ins. Co.,* 340 F.3d 769, 786 (9th Cir. 2003) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993)). Travelers' resistance to meaningfully participate in discovery violates the text and the spirit of the Rules.

### B. The requested documents are discoverable

#### 1. Documents created throughout adjustment of plaintiff's claim

Travelers continues to adjust the Bagleys' claim but refuses—under the guise of work product and attorney-client privilege—to produce any documents that relate to their claim that were created after the Bagleys filed an IFCA Notice and this lawsuit. This Court recently ruled that an insurers activities following receipt of an IFCA Notice are not insulated from discovery. *See Lains v. American Family Mutual Insurance Company,* No. 2:14-cv-01982 JCC, Dkt. 43 at 3-5. It is "well established that documents prepared in the ordinary course of business are not protected by the work product doctrine." *Heath v. F/V Zolotoi.* 221 F.R.D. 545, 550 (W.D.

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Wash. 2004). When a document would have been created even without pending or anticipated litigation, the work product rule does not apply. *See Griffith v. Davis,* 161 F.R.D. 687, 699 (C.D. Cal. 1995); *Babai v. Allstate Ins. Co.,* No. C12-1518 JCC, 2015 WL 1880441 (W.D. Wash. Apr. 24, 2015) (documents created during routine "investigation of an insurance claim" are not work product); *Hapoalim, B.M. v. American Home Assurance Co.,* 1994 WL 119575, No. 92 Civ. 3561 at *4 (S.D.N.Y. April 6, 1994) (no privilege when attorney functioned only as an "investigation monitor"). Travelers is still adjusting the Bagley's claim. Any information related thereto has been created in the regular course of Travelers' claims handling business and is not work product. Travelers' assertion of the attorney-client privilege is likewise inappropriate.

*Cedell v. Farmers Insurance Co.*, 176 Wn.2d 686, 698–700, 295 P.3d 239 (2013) determines the applicability of the attorney-client privilege in Washington insurance bad faith cases. "First party bad faith claims by insureds against their own insurer are unique and founded upon two important public policy pillars: that an insurance company has a quasi-fiduciary duty to its insured and that insurance contracts, practices, and procedures are highly regulated and of substantial public interest." *Id.* (citations omitted). The end result is a framework that trial courts must employ to evaluate insurers' privilege and work-product assertions:

- **1st**, the trial court begins with the "presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant." *Id.* at 698–99. This presumption is overcome only if the insurer can show that the attorney was "not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim." *Id.*

- **2nd**, even if the insurer overcomes the presumption, the entire file is discoverable if there is a foundation in fact for a bad faith claim. *Id.* at 700.

Furthermore, "to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 5

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

privilege does not apply." *HSS Enterprises, LCC v. Amco Ins. Co.*, C06-1485-JPD, 2008 WL 163669 at *3 (W.D. Wash. Jan. 14, 2008); *see also Hapoalim, B.M. v. American Home Assurance Co.,* 1994 WL 119575, No. 92 Civ. 3561 at *4 (S.D.N.Y. April 6, 1994); *Landmark Ins. Co v. Beau Rivage Restaurant, Inc.,* 509 N.Y.S.2d 819, 823 (2d Dep't 1986). For example, communications with counsel regarding coverage decisions are not privileged. *See Sell v. Country Life Insurance Company*, No. CV-15-00353-PHX-DJH, 2016 WL 3179461 at *8 (D. Ariz. June 1, 2016) (email from attorney explaining disagreement with denial of claim was not for the purpose of securing legal advice). Nor are draft denial letters. *Id.* at *7. Communications of this nature surely exist here, where the adjuster was asked to sign a denial letter drafted by the legal department despite agreeing there was no basis for the denial.

The Court should order the production of all material and communications regarding the Bagley's claim—whether located in the claim file or not—because it reflects how Travelers continued to investigate and evaluate the Bagley's claim.

### 2. Training material and claims manuals

Plaintiffs' training material request is narrowly tailored to the individuals who actually worked on the Bagley's claim. *See* Knudsen Decl. Ex. A, B. We know those people to be at least Matt Gjersee, Roopesh Sharma, and someone within the legal department who drafted the third denial letter. Dkt. 27-1, Ex. A at 15:1–3. These documents reflect not only Travelers' claims handling expectations and culture, but also help explain the background of the specific adjusters who worked on the Bagley's claim.

This Court held in *Lains* that training material is discoverable and relevant in bad faith litigation. No. 2:14-cv-01982 JCC, Dkt. No. 43 at 7. Other courts consistently hold that claims manuals and training material are discoverable to evaluate an insurer's course of conduct. *See,*

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*e.g., Hover v. State Farm Mut. Automobile Ins. Co.,* No. CV-13-05113-SMJ, 2014 WL 4239655 (E.D. Wash. Aug. 26, 2014) (training material will allow the plaintiff "to determine . . . how her claim was handled, [and] whether systemic defects exist in Defendant's handling of these types of claims and injuries in general. These are both relevant inquiries to Plaintiff's IFCA claim."); *McCallum v. Allstate Property and Cas. Ins. Co.*, 149 Wn. App. 412, 427, 204 P.3d 944 (2009).

Claims manuals likewise must be produced. In *Bonenberger v. Nationwide Mutual Insurance Co.,* 791 A.2d 378, 382 (Pa. Super. Ct. 2002), the court found that Nationwide's Best Claims Practice Manual was properly considered by the trial court and "was relevant evidence and offers support for the court's ultimate finding of bad faith." The manual set forth the insurer's philosophy of handling claims, which did "not encourage reasonable case–by–case evaluation." *Id.* at 382. *See also APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 14–15 (D. Md. 1980) (ordering production of claims investigation manual).

We know that at least the following claims handling material and training documents exist within Travelers, and have been produced in other bad faith litigation:

- Property Best Practices
- Code of Business Conduct
- Code of Business Conduct and Ethics
- The Life of the Claim
- Knowledge Guide – Property
- The Property Claim Determination Process
- Property Major Case Unit Referral Guidelines
- Introduction to Property
- Building Damage Estimating Guidelines
- The Key Points of a Successful Scope
- Secure, Respected and Care For-student handbook
- General Employee Information
- Property large loss & property technical service power point

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 7

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Knudsen Decl. Ex. E at 22–23. The Court should require Travelers to produce *all* claims handling manuals and training documents because they are reasonably tailored to the issues presented in this case.

### 3. Employee incentive and bonus program information

Travelers has "compensation plan documents which describe, among other things, its compensation philosophy, the elements that make up an employee's total compensation, and the compensation process . . . ." *Id.* Ex. F (2014 Order requiring production of compensation material in bad faith litigation). *See also id.* Ex. G (letter to claims employee notifying him that he has been selected for an award under the "claim incentive bonus program."). Travelers' claims department employees' bonuses are tied in part to their claims payout, which means how much money they have "paid on claims, indemnity, medical and expense dollars." *Id.* Ex. H, 2006 30(b)(6) Testimony of Travelers at 16:11–13. Reducing claims payout means "to pay less per claim—to pay less on your claims." *Id.* at 19:20–20:2.

The Director of Compensation for Travelers confirmed in 2010 that claims handling employees in another bad faith case "were subject to the Travelers Base and Annual Bonus Programs" and provided a list of "documents that discuss the compensation plans . . . ." *Id.* Ex. I. In addition, we know that at least the following incentive or bonus programs documents exist within Travelers:

- Reward & Recognition Program Management Guidelines
- Claim Services Total Compensation Program Guidance
- Compensation Planning
- Equity Overview
- Equity Program
- Supplemental Equity Program
- Reward and Recognition Program
- Policy Performance Management
- Communicating Compensation Guide

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 8

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

- Ensuring Impactful Compensation Discussion Resource Guide
- Understanding Your Compensation
- Understanding Your Compensation Philosophy and Pay Program for Managers
- Compensation Planning Compensation Philosophy and Pay Programs for Managers
- Compensation Philosophy and Pay Programs Summary for Managers
- Annual Cash Bonuses – U.S.
- Travelers Equity Program
- Manager Talking Points for Communicating Compensation Decisions
- Policy: Guaranteed Compensation
- Policy: Discipline

*Id.* Ex. E at 24–25, 27 (May 2016 Exhibit list from another bad faith case against Travelers).

Travelers' compensation program extends beyond just its adjusters—it involves the executives, managers, supervisors in the claims department. As confirmed in a 2006 deposition of a Travelers corporate representative, "Bonuses are used as incentive to managers . . . and the adjusters, for the their performance." *Id.* Ex. H at 25:6–8. The cash bonuses received by managers are "intended to impact the behavior of the people they supervise, the adjusters." *Id.* at 47:17–20. And funding for the compensation program is "established by Travelers senior management and the board of directors." *Id.* at 40:3–7.

An insurer's compensation information regarding bonus, reward, and incentives is discoverable in Washington. *Miller v. Kenny*, 180 Wn. App. 772, 325 P.3d 278 (2014) held:

> **Safeco's bonus and incentive programs were admissible to show that Safeco, at relevant times, was rewarding its adjusters financially for clamping down on coverage and defense costs**. The existence of these programs and the action by a claims analyst to conceal them supplied evidence of Safeco's motive . . . .

*Id*. at 813–14 (emphasis added). Other jurisdictions agree. *See Beyer v. Medico Ins. Grp.,* 266 F.R.D. 333, 336 (D.S.D. 2009); *Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 981 (N.D. Iowa 2006); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004), *as modified* (Dec. 1, 2004). Travelers ties its claims department employees' compensation to claims payouts. This is key bad faith evidence.

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 9

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### 1. Personnel files of employees working on the Bagley claim

Plaintiff's personnel file request is narrowly tailored to persons "who played any role in the handling of the insurance claim." Knudsen Decl. Exs. A, B. The purpose of this request is to investigate the education, training, qualifications, compensation, performance, financial incentives, savings to the company, and discipline, if any, of employees involved in plaintiff's claim.

We know that Travelers' Claim Leadership Performance Reviews produced in other litigation assess claim employees' "payout management" and "expense management." *Id.* Ex. J. If Travelers has rewarded those involved in the Bagley claim for reducing claim payments, reducing investigation costs, or delaying payouts, it would create a conflict of interest between the claim handler and the insured and will be strong evidence of bad faith.

Personnel files also contain discoverable information regarding an adjuster's training, education, job performance, discipline, and other history. *See, e.g., Stokes v. Life Ins. of N. Am.*, No. CV 06-411-S-LMB, 2008 WL 2704564, at *1–2 (D. Id. July 3, 2008); *Allied World Assurance Co. (U.S.) v. Lincoln Gen. Ins. Co.*, 280 F.R.D. 197 (M.D. Pa. 2012); *Henderson v. Liberty Mut. Ins. Co.*, No. 2:11-CV-218-KS-MTP, 2012 WL 3267544, at *2 (S.D. Miss. Aug. 9, 2012); *Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 483 (D.S.D. 2012); *Lyon v. Bankers Life & Cas. Co.*, No. CIV.09-5070-JLV, 2011 WL 124629, at *8 (D.S.D. Jan. 14, 2011); *Weller v. Am. Home Assurance Co.*, No. 3:05-cv-90, 2007 WL 1097883, at *7 (N.D.W. Va. Apr. 10, 2007); *Waters v. Continental Gen. Ins. Co.*, No. 07-CV-282-TCK-FHM, 2008 WL 2510039, at *1 (N.D. Okla. June 19, 2008). Travelers' refusal to produce personnel files is not only contrary to its behavior in other litigation, it is also against the clear weight of authority.

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### 2. Prior complaints against Travelers

Plaintiff requested "complaints made by insureds about Travelers in the last five years." Knudsen Decl. Ex. A. Travelers agreed to produce only those complaints within Washington state and only those regarding homeowners' policies. *Id.* Ex. B. There is no justification for such a narrow restriction.

At trial, the fact finder—for bad faith, CPA, IFCA, fraud, and other claims—will need to evaluate the extent and degree of Travelers' bad faith conduct and consider its pattern of violations. Discovery of other lawsuits is a classic means of locating: (1) pattern or practice evidence to establish bad faith or a CPA claim directly, or indirectly through a WAC violation, (2) conduct to establish the basis for an injunction, (3) witnesses or knowledgeable experts from other cases, and (4) admissions by Travelers under the party–opponent rule or the doctrines of judicial or collateral estoppel. A policyholder has a right to discover evidence of other bad faith cases against his or her insurer to evaluate the insurer's claim handling practices and coverage interpretations. *See State ex rel. Allstate Ins. Co. v. Gaughan*, 640 S.E.2d 176, 183 (W. Va. 2006); *PECO Energy Co. v. Ins. Co. of N. Am.,* 852 A.2d 1230, 1235 (Pa. 2004); *Jackson v. State Farm Mut. Auto. Ins. Co.*, 600 S.E.2d 346, 358–59 (2004); *Cartwright v. The Equitable Life Assurance Soc. of the United States*, 276 Mont. 1, 21–22, 914 P.2d 976 (1996); *Webber v. State Farm Mut. Auto Ins. Co.,* 873 F. Supp. 209, 210 (S.D. Iowa 1994); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989); and *Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073, 1081 (Ariz. 1987). The Bagleys are entitled to this information to support her claim.

### 3. Loss ratio and other profit information

Financial documents that evaluate the effect of reduced claims payments to Travelers' bottom line are discoverable, whether measured by combined loss ratio, profit, revenue per line

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 11

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of business, or other means. We know that Travelers has measured the claims payout performance of offices across the country on a monthly basis with "scorecards." Knudsen Decl. Ex. H at 11:4–6. These scorecards are used to encourage certain claims handling behavior and are tied to bonuses. *Id.* at 19:14–24. The Court should order production of this information.

### 4. Underwriting file

Underwriting files are discoverable because they may show information about the interpretation of key policy terms at issue in the case.

> . . . underwriting files will often be relevant when the issues involve more than strictly a determination of coverage under the language of the policy. . . the first-party insurer's underwriting personnel often memorialize their understanding of what the policy provides . . . underwriting materials which are prepared in the ordinary course of business are routinely discoverable . . ..

Litig. & Prev. Ins. Bad Faith § 12:4 (3rd ed.).

## VI. CONCLUSION

The Bagleys respectfully request that the Court grant their motion so that they may adequately prepare their case on the merits.

DATED this 23rd day of June, 2016.

KELLER ROHRBACK L.L.P.

By: s/ *Kathryn Knudsen*
William C. Smart, WSBA #8192
Kathryn M. Knudsen, WSBA #41075
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

I hereby certify that on June 23, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

> Lloyd Bernstein
> 300 Pioneer Tower
> 888 SW Fifth Avenue
> Portland, OR 97204
> loyd.bernstein@bullivant.com
> ***Attorneys for Defendant***

By: s/ *Shannon K. McKeon*
Shannon K. McKeon
Legal Assistant
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

PLAINTIFFS' MOTION TO COMPEL
2:16-CV-00706- JCC - 13

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384