THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CURT BAGLEY, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>TRAVELERS HOME AND MARINE INSURANCE COMPANY,<br><br>   Defendant. | CASE NO. C16-0706 JCC<br><br>ORDER GRANTING PARTIAL SUMMARY JUDGMENT, DENYING RECONSIDERATION, COMPELLING DISCOVERY, AND DECLINING TO SEAL |

This matter comes before the Court on Defendant's motion for summary judgment striking claim for injunctive relief (Dkt. No. 40), Defendant's motion for reconsideration (Dkt. No. 42), Plaintiffs' motion to compel (Dkt. No. 30), and Plaintiffs' motion to seal (Dkt. No. 54). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and, for the reasons explained herein, hereby GRANTS Defendant's motion for partial summary judgment (Dkt. No. 40), DENIES Defendant's motion for reconsideration (Dkt. No. 42), GRANTS Plaintiffs' motion to compel (Dkt. No. 30), and DENIES Plaintiffs' motion to seal (Dkt. No. 54).

I.  BACKGROUND

The facts in this dispute are well established. Plaintiffs' dock and ramp were damaged in a storm. (Dkt. No. 16 at 2.) Defendant refused to pay for the damage, arguing that it was not

covered. (*Id.*) After Plaintiffs filed suit, Defendant admitted coverage and agreed to pay. (*Id.* at 17.)

The parties have now filed a number of interrelated motions. The Court will address them in turn.

## II. DISCUSSION

### A. Defendant's Motion for Partial Summary Judgment

In their complaint, Plaintiffs asked the Court to "enjoin Travelers from further acts that violate the Washington Administrative Code, the insurance code, or the Consumer Protection Act." (Dkt. No. 16 at 9.) Defendant now moves to dismiss this claim on summary judgment, arguing that Plaintiffs do not have standing to seek such relief. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an *irreparable* injury" to have standing in an Article III court. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis added). The instant action is predicated on Defendant having, allegedly, wrongfully denied coverage, thereby costing Plaintiffs money; Plaintiffs' injunction seeks to avoid this same result in the future. (Dkt. No. 16 at 5–10.) However, "monetary injury is not normally considered irreparable." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

Plaintiffs do not meaningfully dispute that the injuries at issue can be remedied via monetary relief. (Dkt. No. 69 at 10–11.) But they argue that under the Washington Consumer Protection Act, they retain standing even if they can be "made whole by a money judgment." (Dkt. No. 69 at 10) (quoting *Hockley v. Hargitt*, 82 Wn.2d 337, 349 (1973)). However, "a plaintiff whose cause of action… is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury" to establish Article III standing." *Hangarter*, 373 F.3d at 1022.

1    Plaintiffs do not demonstrate the threat of an irreparable injury, thus they do not have
2 standing to pursue their claim for injunctive relief in this Court. The Court therefore grants
3 Defendant's motion to dismiss. But because Defendant removed this case from state court, (Dkt.
4 No. 1), the Court grants the motion without prejudice. Plaintiffs may refile this claim in state
5 court if they so choose.

6    **B.    Defendant's Motion for Reconsideration**

7    Defendant moves the Court to reconsider its previous order in which it held that Plaintiffs
8 could depose Lisa Cronin and Lloyd Bernstein, Defendant's in-house counsel and trial counsel.[1]
9 (Dkt. No. 32 at 11.) Defendant argues that this holding was made in "manifest error." LCR
10 7(h)(1).

11        *1.    The March 9, 2016 Denial Letter*

12    On March 9, 2016, Defendant sent Plaintiffs a letter in which it effectively denied their
13 claim for a third time. (Dkt. No. 18-1 at 9.) Matt Gjersee, Plaintiffs' adjustor, testified that he
14 signed but did not author that letter. (Dkt. No. 27-1 at 9.) Defendant now admits that Cronin
15 helped him to write it. (Dkt. No. 42 at 5.)

16    As the Court previously explained, there is a presumption of "no attorney-client privilege
17 relevant between the insured and the insurer in the claims adjusting process." *Cedell v. Farmers*
18 *Ins. Co. of Washington*, 176 Wash. 2d 686, 698–99 (2013). "[T]he insurer may overcome the
19 presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary
20 tasks of investigating and evaluating or processing the claim, but instead in providing the insurer
21 with counsel as to its own potential liability; for example, whether or not coverage exists under
22 the law." *Id.* at 699. The Court held that drafting a letter denying coverage was "inarguably

---

[1] The Court notes that even though it is dismissing Plaintiffs' injunction claim, the Cronin and Bernstein depositions remain relevant for Plaintiffs' other claims. (*See* Dkt. No. 16 at 5–10) (alleging negligent claims handling, violation of the Consumer Protection Act, fraud, and violation of the Insurance Fair Conduct Act, among other things).

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT, DENYING RECONSIDERATION,
COMPELLING DISCOVERY, AND DECLINING
TO SEAL
PAGE - 3

among the 'quasi-fiduciary tasks of investigating and evaluating or processing the claim.'" (Dkt. No. 32 at 7.) Therefore, Cronin could be deposed regarding her authorship of the letter. (*Id.*)

Defendant now argues that Plaintiffs' letter was not a request for coverage; rather, it was an IFCA notice letter. Therefore, Defendant argues that its response wasn't a denial of coverage. But even if Plaintiffs' letter was sent for the purpose of providing IFCA notice, it was also a request for coverage—a request that Defendant denied. (Dkt. No. 18-1 at 10.) In denying the request, Defendant explained why Plaintiffs' policy did not cover their claim. (*Id.*) That is claim handling—whether claim processing, claim evaluation, or both. Assisting an adjustor in writing such a letter is not "providing the insurer with counsel as to its own potential liability," so it does not overcome the presumption against privilege.

Defendant argues that because Plaintiffs had already filed suit when they sent their third request/IFCA letter, its response could not have involved claim handling. But it provides no clear, controlling authority for why that is the case. (Dkt. No. 42 at 4.) Although the Court may have found it *relevant* in past cases that certain claim handling activities occurred before litigation commenced, it did not find this dispositive. *Lains v. American Family Mut. Ins. Co.*, Case No. C14-1982, Dkt. No. 43 at *4 (W.D. Wash. July 7, 2015); *Babai v. Allstate Ins. Co.*, Case No. C12-1518 JCC, 2015 WL 1880441, at *2 (W.D. Wash. Apr. 24, 2015). Indeed, it is easy to imagine many scenarios in which an insurance company continues to adjust a claim after suit is filed; this action is but one. As the Court already explained, *Cedell*'s holding "applies broadly to the quasi-fiduciary task of claim handling, and is not limited to only pre-litigation activities." (Dkt. No. 32 at 6.)

Defendant also asks the Court to clarify what questions Plaintiffs' counsel may ask Cronin during her deposition. As the Court previously held:

> Plaintiffs are… not entitled to discover information that is actually privileged. Plaintiffs may not, therefore, inquire about "confidential disclosures" made by Defendant to Mr. Bernstein or Ms. Cronin "in order to obtain legal advice," nor may Plaintiffs inquire about the lawyers' responses.

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT, DENYING RECONSIDERATION,
COMPELLING DISCOVERY, AND DECLINING
TO SEAL
PAGE - 4

(Dkt. No. 32 at 9.) That admonition stands. But the Court has also explained that assisting an adjustor in writing a denial letter is not a privileged task. Thus, Plaintiffs are free to inquire about it.

   1. *The April 2016 Training*

In April 2016, Cronin and Bernstein led claim handling training for Gjersee and his supervisor, Roopesh Sharma. (Dkt. No. 13 at 4–6, 13.) The Court previously held that the content of this training and the materials distributed during it were discoverable, and denied Defendant's motion to quash Cronin and Bernstein's depositions on this topic. (Dkt. No. 32 at 8.) As the Court explained, "Defendant does not argue that Mr. Bernstein and Ms. Cronin were responding to 'confidential disclosures made by a client to an attorney in order to obtain legal advice.'" (*Id.*) Thus, regardless of whether this training involved a quasi-fiduciary task, its contents were not privileged. But the Court also held that the training *did* in fact involve a quasi-fiduciary task, because training adjustors on claim handling was too intimately involved with that activity to be excluded from discovery in insurance bad faith litigation. (*Id.*) Defendant argues that the "quasi-fiduciary relationship…only arises when the insurer is engaged with an insured regarding a specific claim." (Dkt. No. 42 at 8.) But they provide no controlling, dispositive precedent on this point.

Finally, Defendant argues that because the April 2016 training was held after Plaintiffs filed suit, it was unrelated to the adjustment of Plaintiffs' claims. But adjustment continued after the training: namely, Defendant did not offer to cover Plaintiffs' losses until May 6, 2016. (Dkt. No. 32 at 2.)

Again, Defendant asks the Court to clarify what questions Plaintiffs may ask Cronin and Bernstein regarding the April 2016 training. Specifically, Defendant requests that the Court:

> prohibit Plaintiffs from asking questions of Ms. Cronin and Mr. Bernstein that require them to divulge their interpretation or understanding of the law or what Travelers is required to do under the law. The depositions should not include counsels legal advice as to the interpretation and application of Washington law

and any other legal advice or analysis provided in the training.

(Dkt. No. 42 at 8–9.) As the Court has explained, attorney-client privilege protects confidential disclosures made to an attorney by a client to obtain legal advice, as well as the attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Attorney work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by . . . another party." Fed. R. Civ. P. 26(b)(3)(A). Plaintiffs are not entitled to obtain information that falls in either of these categories, and Defendant may object if they attempt to do so. But the Court will not make a blanket statement as to the questions Plaintiffs can and cannot ask without seeing the questions themselves.

Defendant's motion for reconsideration is therefore denied. Plaintiffs' may depose Cronin and Bernstein within the limits imposed by this Order and the Court's previous order (Dkt. No. 32).

### C. Plaintiffs' Motion to Compel

Plaintiffs move the Court to compel Defendant to respond to certain discovery requests (Dkt. No. 30). But before the Court addresses that motion, it must first attend to several of the parties' related filings.

After Plaintiffs filed their motion to compel, the Court entered a stipulated protective order that appeared to resolve much if not all of Plaintiffs' motion. (Dkt. No. 39.) Consequently, the Court ordered Plaintiffs to identify any discovery disputes that remained outstanding. (Dkt. No. 43.) Plaintiffs provided the Court with two status reports (Dkt. Nos. 48 and 62) that purported to respond to the Court's minute order, along with accompanying declarations from Plaintiffs' counsel William Smart (Dkt. Nos. 47 and 64) and Kathryn Knudsen (Dkt. No. 49).

Defendant has filed two surreplies asking the Court to strike the Smart and Knudsen Declarations, arguing that they go beyond the scope of the Court's order and present new evidence and argument. (Dkt. Nos. 57 and 66.) Plaintiff has filed a praecipe asking the Court to replace the first Smart Declaration (Dkt. No. 47) with a later "revised" one, as the first was

subject to a protective order in a separate case. (Dkt. No. 63.)

The Court acknowledges that Plaintiffs have withdrawn the first Smart Declaration (Dkt. No. 47) and request that it be stricken. (Dkt. No. 61.) Therefore, the Court strikes that declaration from the docket. But the Court will not replace it with the revised Smart Declaration.

The Court will also not strike the Knudsen Declaration (Dkt. No. 49) or the revised Smart Declaration (Dkt. No. 64). Although they are not particularly relevant, and this Order does not in any way turn on them, the Court finds that they do provide context for Plaintiffs' status reports; thus, they are responsive to a court order and need not be stricken. Moreover, Defendant has been able to respond to these declarations via its surreplies.

With these matters out of the way, the Court next turns to the issues that remain in Plaintiffs' motion to compel.

1.  *Certification That the Parties Conferred*

Motions to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Plaintiff argues that the parties' discovery conference on April 5, 2016 satisfied Rule 37. (Dkt. No. 31-1 at 13.) Although Defendant responds that the conference was insufficient, it is unclear why that is so. It appears that the parties discussed Plaintiffs' discovery requests at the conference, and identified those that were in dispute. (*Id.*) The Court therefore finds that the parties properly conferred.

2.  *Plaintiffs' Claim File*

Plaintiff requests that Defendant release Plaintiffs' claim file and all related claim handling documents. Defendant argues that it should not have to release any documents from after December 3, 2015, the date it denied coverage for the first time, because that was when it stopped adjusting Plaintiffs' claim. (Dkt. No. 35 at 2.) But Defendant appears to have denied Plaintiffs' claim a second time on January 12, 2016. (Dkt. No. 18-1 at 5.) Responding to an emailed request from Mr. Bagley, Gjersee wrote:

> I have reviewed this claim with my management team and took it one step further to the technical coverage unit. Unfortunately, the companies position on this claim is outlined in the denial letter which was sent to you.

(Dkt. No. 18-1 at 5.) The Court has also explained that claim handling continued even after Plaintiffs filed suit. Defendant responded to Plaintiffs' IFCA notice letter/coverage request with a detailed explanation of why it was denying coverage. (Dkt. No. 18-1 at 9–11.) And on May 6, 2016, Defendant admitted that Plaintiffs' policy covered their claim. (Dkt. No. 10-1 at 16.)

Although the Court will not order Defendant to produce documents subject to attorney client privilege or the work product doctrine, it has already explained that these designations do not apply to documents that relate to claim handling. *Cedell*, 176 Wash. 2d at 699. Thus, Defendant is ordered to produce all documents in Plaintiffs' claim file that relate to claim handling, even if these documents were created after the commencement of litigation.

        3.    *Training Materials and Claim Handling Manuals*

Plaintiffs request Defendants' training materials and claim manuals. The Court has explained that training materials are discoverable, (Dkt. No. 32 at 7–8), while other courts in this District have held that claim manuals are also discoverable. *E.g.*, *Rinehart v. Life Ins. Co. of N. Am.*, No. C08-05486-RBL, 2009 WL 2240286, at *2 (W.D. Wash. July 27, 2009). It appears that although Defendant has produced some of the requested documents, it has not produced any from outside the homeowner's insurance context. (Dkt. No. 36 at 6.) Defendant argues that because Plaintiffs' policy is for homeowner's insurance, materials and manuals on property insurance in general are unlikely to lead to admissible evidence. (Dkt. No. 33 at 6) (citing Fed. R. Civ. P. 26(b)(1)).

The Court disagrees. Because Plaintiffs allege insurance bad faith, Defendant's materials and manuals on property insurance and claim handling in general are relevant to this suit. It appears that Defendant possesses materials on "Property Best Practices," "Introduction to Property," "The Life of the Claim," and "The Property Claim Determination Process," among other relevant topics. (Dkt. No. 31-1 at 53–55.) Materials such as these may well shed light on

how Defendant instructs its adjustors to investigate, evaluate, and process a claim like Plaintiffs'.

Defendant is therefore ordered to produce all requested training materials and claim manuals.

### 4. *Employee Compensation Information*

Plaintiff alleges that Defendant ties the bonuses of its claim department employees to low claim payouts. (Dkt. No. 30 at 9.) Plaintiff therefore requests that Defendant produce documents related to its employees' compensation. Such information is discoverable in Washington. *Miller v. Kenny*, 180 Wash. App. 772, 813 (2014). And Defendant appears to agree to release much of the requested information. (Dkt. No. 33 at 7.) However, Defendant argues that it should only have to release compensation information for its claim adjustors. (Dkt. No. 58 at 3.)

But Plaintiffs assert, with some evidence, that Defendant's compensation program is established by its top-level employees to reward managers, and the adjustors they supervise, for their performance, and thus influence their behavior. (Dkt. No. 31-2 at 21, 28, 31.) Information about such a program, which, again, Plaintiffs allege is intended to reward low claim payouts, is highly relevant to their claims. Plaintiffs are entitled to discover all documents relevant to this compensation program, not merely those that relate to the payment of claim adjustors.

Thus, to the extent that Defendant has not already done so, it is ordered to produce all requested discovery regarding its employee compensation program.

### 5. *Personnel Files*

Plaintiffs request that Defendant produce the complete files for all personnel working on their claim. Defendant appears to have partially produced this information. (Dkt. No. 58 at 4.) However, it has not produced the reviews, disciplinary information, and compensation information for these individuals. (Dkt. No. 62 at 2.) Defendant also appears to have only produced information for Roopesh Sharma from before 2014. (*Id.*) Defendant does not meaningfully dispute that its personnel files are discoverable. (Dkt. No. 33 at 7; Dkt. No. 58 at 4.) And courts frequently order that such information be produced. *See, e.g.*, *Stokes v. Life Ins. of*

*N. Am.*, No. CV 06-411-S-LMB, 2008 WL 2704564, at *1 (D. Idaho July 3, 2008).

Defendant is therefore ordered to produce all requested personnel files.

### 6. Loss Ratio and Other Profit Information

Finally, Plaintiffs request "[f]inancial documents that evaluate the effect of reduced claims payments to Travelers' bottom line." (Dkt. No. 30 at 11.) Defendant argues that this request should be denied as unduly vague or unlikely to lead to admissible evidence.

In fact, it appears that Defendant should be well aware of the information Plaintiffs seeks. Plaintiffs already requested it at the parties' discovery conference on April 5, 2016. (Dkt. No. 31-1 at 14.) But Defendant twice refused to release it. (Dkt. No. 34-1 at 24.)

Other courts have granted similar motions to compel. For example, in *Kirschenman v. Auto-Owners Ins.*, the court ordered production of "[a]ll documents related to efforts to reduce loss ratios or claims severity costs," and explained that this request related to how "company goals for… keeping expenses down were arrived at, how they were communicated to employees, and what programs and incentives may have existed to encourage employees to help the company meet these goals." 280 F.R.D. 474, 483, 485 (D.S.D. 2012).

Plaintiffs allege that Defendant tracks information regarding the claim payouts of its offices nationwide and uses this data to encourage certain claim handling behavior. (Dkt. No. 31-2 at 14, 18.) Documents that confirm the existence of such a program would be relevant to Plaintiffs' claims.

Defendant is therefore ordered to produce loss ratio and other profit information.

### D. Plaintiffs' Motion to Seal

Plaintiff moves to seal Exhibit A to the Declaration of Kathryn Knudsen ("Exhibit A"). (Dkt. No. 55). Defendant designated Exhibit A confidential and thus has the burden to justify that it be sealed. LCR 5(g)(3). Exhibit A provides instructions for Defendant's employees on how they should adjust claims. (Dkt. No. 55 at 1.) The Court notes that there is "a strong presumption of public access to the court's files," LCR 5(g), and that "[t]he business of

1 | insurance is one affected by the public interest." RCW 48.01.030.

2 |     A party must demonstrate "good cause" to seal a document; this requires a
3 | "particularized showing" that "specific prejudice or harm will result if the information is
4 | disclosed." 331 F.3d 1122, 1135-38. Defendant has not made such a showing.

5 |     Defendant argues that Exhibit A is "proprietary," that it contains "confidential
6 | information," and that it would "harm Travelers if its competitors had access to it." (Dkt. No. 67
7 | at 3.) But the Court has inspected Exhibit A and finds that it is both highly general and contains
8 | little more than statements of pure common sense. (Dkt. No. 55 at 2.) Indeed, it is entirely
9 | unclear what competitive advantage Defendant might lose if Exhibit A were unsealed.
10 | Defendant's explanation of the harm that would occur should Exhibit A be disclosed is thus
11 | insufficiently "particularized."

12 |     Defendant also seems to argue that Exhibit A involves trade secrets. (*Id.* at 1.) But under
13 | Washington law, an insurance manual does not involve trade secrets if it "simply set[s] out good
14 | claims practices and philosophies that would be obvious to any insurance company." *Woo v.*
15 | *Fireman's Fund Ins. Co.*, 137 Wash. App. 480, 489 (2007). The Court finds that this describes
16 | Exhibit A exactly.

17 |     The Court therefore declines to seal Exhibit A.

18 | **III.   CONCLUSION**

19 |     For the foregoing reasons, the Court GRANTS Defendant's motion for partial summary
20 | judgment (Dkt. No. 40), DENIES Defendant's motion for reconsideration (Dkt. No. 42),
21 | GRANTS Plaintiffs' motion to compel (Dkt. No. 30), and DENIES Plaintiffs' motion to seal
22 | (Dkt. No. 54).

23 |     The Court therefore ORDERS that Plaintiffs' claim for injunctive relief (Dkt. No. 16 at
24 | 9–10) be DISMISSED WITHOUT PREJUDICE and that Exhibit A to the Declaration of
25 | Kathryn Knudsen (Dkt. No. 55) be UNSEALED.

26 |     In addition, the Court STRIKES the July 22, 2016 Declaration of William Smart (Dkt.

1    No. 47).

2         DATED this 25th day of August 2016.

 

                                      John C. Coughenour
                                      UNITED STATES DISTRICT JUDGE

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT, DENYING RECONSIDERATION,
COMPELLING DISCOVERY, AND DECLINING
TO SEAL
PAGE - 12